UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**KATHLEEN F.,**

       **Plaintiff,**

   v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

       **Defendant.**

Case No. 1:19-cv-17787
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kathleen F. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.   PROCEDURAL HISTORY**

On January 15, 2013, Plaintiff filed an application for benefits, alleging that she has been disabled since May 11, 2011. R. 156, 224–30. The application was denied initially and upon reconsideration. R. 159–63, 165–67. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

law judge. R. 168–69. Administrative Law Judge Marguerite Toland ("ALJ Toland") held a hearing on September 22, 2015, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 54–91. In a decision dated August 1, 2016, ALJ Toland concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from May 11, 2011, Plaintiff's alleged disability onset date, through June 30, 2015, the date on which Plaintiff was last insured for Disability Insurance Benefits. R. 20–46. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 24, 2016. R. 1–6. Plaintiff appealed that decision pursuant to 42 U.S.C. § 405(g). R. 741–45. On October 3, 2018, United States Magistrate Judge Paul A. Zoss reversed that administrative decision, concluding that ALJ Toland had erred in her evaluations of the opinions of William Hankin, M.D., a psychiatrist, and of Plaintiff's subjective complaints regarding her mental impairments. R. 696–740; *Kathleen F*[.] *v. Berryhill*, Case No. 1:16-cv-9423.

On June 4, 2019, a different administrative law judge, Nicholas Cerulli ("ALJ Cerulli"), presided over another administrative hearing at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 639–78. In a decision dated August 8, 2019, ALJ Cerulli concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from May 11, 2011, the alleged disability onset date, through June 30, 2015, the date on which Plaintiff was last insured. R. 618–30. Plaintiff timely filed an appeal from that decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 10, 2020. Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[2] On June 30, 2020, the case was reassigned to the undersigned. ECF No. 18. The matter is now ripe for disposition.

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

3

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

4

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

5

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

      **B.**     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

6

impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.     ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 53 years old on the date on which she was last insured. R. 44. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 11, 2011, her alleged disability onset date, and June 30, 2015, the date on which she was last insured for benefits. R. 22.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, bipolar disorder, anxiety disorder, and mild intellectual disability. R. 23. The ALJ also found that the following impairments were not severe: left shoulder pain, hypertension, migraine headaches, vertigo, history of opioid dependence and lichen simplex chronicus. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 25–28.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 29–44. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an informal waitress. R. 44.

At step five, the ALJ found that a significant number of jobs–*i.e*., approximately 700,00 jobs as bottling line attendant; approximately 250,000 jobs as a routing clerk – clerical; approximately 1,000,000 jobs as a cleaner/housekeeper–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 45. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 11, 2011, her alleged disability onset date, through June 30, 2015, the date on which she was last insured for benefits. R. 46.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 22; *Plaintiff's Reply Brief*, ECF No. 26. The Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 23.

## IV.     RELEVANT MEDICAL EVIDENCE

Beginning on December 5, 2014, Plaintiff was treated on a bimonthly basis by William Hankin, M.D., a psychiatrist. R. 581. On December 19, 2014, Dr. Hankin noted that Plaintiff "had not successfully worked for a couple of years now and had not responded to multiple trials of medication to get her better." R. 553 (Exhibit 14F, p. 1). Upon mental status examination, Plaintiff made good eye contact, was expressive and distraught. *Id.* Dr. Hankin noted a normal and unpressured talk rate, unretarded psychomotor pattern, intact associations, depressed and hopeless mood, and a lack self-confidence; Plaintiff was alert, oriented, and had some reason and judgment. *Id*. "She had ideas of reference to what people thought about her." *Id*. Dr. Hankin opined as follows:

> The patient had held it together to a degree in her early working years. She still had many jobs and had left jobs because she became uncomfortable with the people she worked with. Because of her personality she had limited capacity to make positive relationships with others. Both her mental disorder, her quasi-psychotic state, her ideas of reference, and her lack of trust and self-regard made it impossible for her to establish positive relationships on the job. Only because her husband is very supportive and understanding has she been able to stay in this marriage. He himself is a very positive person who always looks on the bright side. She is totally disabled from performing useful work. She cannot manage even menial employment. Her mental condition may be moderated by medications but she has failed so many attempts in the past that even this is unlikely. . . . Support the patient's attempts to get on social security disability as she is not fit to work.

*Id*. ("the December 2014 opinion"). Dr. Hankin diagnosed bipolar disorder and recommended continued medical treatment and monthly psychotherapy. *Id.*

On January 16, 2015, Dr. Hankin noted that Plaintiff had fewer racing thoughts, "but she still felt persecuted by her in-laws." R. 551 (Exhibit 14F, p. 1). Plaintiff reported that Seroquel caused her to feel drowsy and dizzy so she only takes it at night. She was sleeping better, ("no longer drank wine for her insomnia which was better"), had an increased appetite, and had gained five pounds. *Id*. Dr. Hankin noted a good gait and station and commented that Plaintiff

9

"made a strong presence, appeared well-nourished and was in moderate acute distress." *Id*. Upon mental status examination, Dr. Hankin noted that Plaintiff made good eye contact, was calmer, talked at a normal rate without pressure or retarded psychomotor aspects. *Id*. She had intact associations and no thoughts of suicide, "but she would like to be dead." *Id*. She was alert, oriented, and had some reason and judgment. *Id*. Dr. Hankin went on to opine as follows:

> Her psychosis was much relieved by the Seroquel. She still had a fear of going out in public. She could not work because of her ideas of reference and her inability to establish trust. Her disadvantaged childhood and her mother's insanity and father's alcoholism left her in a chronic state of distrust. She also inherited something of her mother's mental illness. She lacked the mood stability and the resources to hold a job. Even now with some improvement in her mood, even though she wants to work, "When I get there I want to get away from people." She had worked at one time in a deli for []years, but then she started fighting with people and could no longer tolerate other people.

*Id*. ("the January 2015 opinion"). Dr. Hankin diagnosed bipolar disorder and recommended that she continue with medication, pursue disability, and continue monthly psychotherapy. *Id*.

On September 16, 2015, Dr. Hankin completed a one-page check-the-box letter, addressed "To Whom It May Concern" "Re Kathleen M. F[.]" R. 580 (Exhibit 18F). Dr. Hankin checked the two boxes next to text that stated as follows:

> I hereby state that the above individual has been a patient of mine and, in my best medical opinion, is totally disabled without consideration of any past or present drug and/or alcohol use. Drug and/or alcohol use is not a material cause of this individual's disability. In my best medical opinion the use is not material because:
>
> . . . My patient is not currently using drugs and/or alcohol and remains disabled.

*Id*. ("the September 2015 letter").

On September 21, 2015, Dr. Hankin completed a five-page check-the-box and fill-in-the-blank form entitled "Mental Impairment Questionnaire." R. 581–85 ("the September 2015 Questionnaire"). On the DSM-IV Multiaxial Evaluation, Dr. Hankin noted 296.52 (Bipolar I disorder, most recent episode (or current) depressed, moderate) on Axis I; no diagnosis on Axis

10

II; fibromyalgia and status post vehicle whiplash on Axis III; unable to work on Axis IV; and a GAF of 52 on Axis V. R. 581. On the DSM-5 Evaluation, Dr. Hankin noted psychosocial factors of being unable to get or keep job and marital stress. *Id*. He also noted that Plaintiff had not required hospitalization or inpatient treatment for her symptoms, that her diagnoses and limitations were expected to last at least twelve months, and that she was not a malingerer. *Id*. When asked to identify the signs and symptoms that support his diagnoses and assessment, Dr. Hankin checked the following boxes (with handwritten notes in parentheses): depressed mood; persistent or generalized anxiety, irritable, labile; feelings of guilt or worthlessness; hostility or irritability; other mood disturbances ("thought of self harm"); suicidal ideation; other oddities of thought ("ideas of reference – paranoia"); difficulty thinking or concentrating; anhedonia/pervasive loss of interests; decreased energy; deeply ingrained, maladaptive patterns of behavior; delusions ("people against her"); and excessive sleep ("sleeps from [unintelligible] and depressed"). R. 582. When asked to identify the most frequent and/or severe of these signs and symptoms, Dr. Hankin responded that Plaintiff's "anxiety and distress are the worst limitations – she just has to leave work – happened multiple times. She has ideas of reference that people are against her, talking about her[.]" R. 583. According to Dr. Hankin, "multiple mental status exams" supported his diagnoses and assessment. *Id*. He denied that Plaintiff had a low I.Q. or reduced intellectual functioning and noted that her psychiatric conditions made her fibromyalgia worse. *Id*. Dr. Hankin checked the box marked "yes" when asked whether Plaintiff experiences episodes of decompensation or deterioration in a work or work-like setting that causes her to withdraw from the situation and/or experience an exacerbation of symptoms, writing that "she gets overwhelmed, confused, and has to leave work, go home." *Id*.

  Dr. Hankin went on to opine as to Plaintiff's ability to perform mental activities in a

competitive environment on a sustained and ongoing basis, which was defined as eight hours per day, five days per week. R. 584. According to Dr. Hankin, Plaintiff's limitations were "none-to-mild" in in her abilities to remember locations and work-like procedures; understand, remember, and carry out simple one-to-two step instructions; make simple work-related decisions; ask simple questions or request assistance; adhere to basic standards of neatness; be aware of hazards and take appropriate precautions. *Id*. Plaintiff had "moderate-to-marked" limitations in functioning in the following areas: sustain ordinary routine without supervision; travel to unfamiliar places or use public transportation; set realistic goals; and make plans independently. *Id*. Plaintiff had "marked" limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and consistently be punctual; work in coordination with or near others without being distracted by them; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; interact appropriately with the public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them; maintain socially appropriate behavior; respond appropriately to workplace changes. *Id*. According to Dr. Hankin, Plaintiff was likely to be absent from work more than three times per month as a result of her impairments or treatment. R. 585. In Dr. Hankin's medical opinion, Plaintiff's symptoms and related limitations have existed since May 11, 2011. *Id*.

V.   **DISCUSSION**

Plaintiff raises a number of challenges to ALJ Cerulli's decision, including, *inter alia*, that the ALJ erred in when weighing Dr. Hankin's opinions, her treating psychiatrist. *Plaintiff's Brief*, ECF No. 22, pp. 10–17; *Plaintiff's Reply Brief*, ECF No. 26, pp. 1–6. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," and one sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F.

13

App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6).[3] Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may

---

[3] The Social Security Administration amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. § 404.1527 (providing that the rules in this section apply only to claims filed before March 27, 2017); 20 C.F.R. § 416.927 (same), and SSR 96-2p was rescinded. Plaintiff filed her claims on January 15, 2013.

choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, at step four of the sequential evaluation process, ALJ Cerulli found that Plaintiff had the RFC to perform light work subject to certain additional exertional and non-exertional limitations:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequent climbing of ramps and stairs, but no climbing of ropes, ladders, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; no exposure to hazards such as unprotected heights and moving machinery; unskilled work involving routine and repetitive tasks; low stress, defined as occasional changes in the work setting and occasional independent decision-making; no quota or production based work but rather goal oriented work; and occasional interaction with coworkers, supervisors, and members of the public.

R. 624. In reaching this determination, ALJ Cerulli, *inter alia*, considered Dr. Hankin's December 2014 opinion, January 2015 opinion, and September 2015 letter as follows:

> Overall, the treatment notes show that psychiatric treatment has controlled her racing thoughts, with good response with medication adjustments (Exhibit 17F [R. 567–79]). Moreover, the record does not include persuasive medical opinions that support the claimant's allegations. First, Jane Nolan, LCSW, provided a 2014 statement that the claimant should be awarded Social Security disability due to her consistent psychiatric diagnoses (Exhibit 9F). This opinion is afforded limited weight, as it is not consistent with the claimant's treatment notes that document improving symptoms with medications and adjustment to those medications. Rather it is apparently primarily based on the claimant's subjective complaints, including that she is unable to hold down a job. Moreover, this opinion is conclusory and does not provide a function-by-function analysis of the claimant's functioning. Finally, determinations of disability under the regulations are reserved to the Commissioner. Similarly, medical source statements from Dr. Chazin, Dr. Willima Glenn, and Dr. William Hankin concluded that the claimant had significant issues working due to her mental and emotional issues, and the claimant was disabled from fulltime work (Exhibits 12F; 14F; 18F; 20F; 24F). These opinions are again conclusory and do not provide support for such a conclusion, [and are]

> inconsistent with the longitudinal treatment notes that show some control and improvement of symptoms.

R. 627. ALJ Cerulli went on to consider Dr. Hankin's September 2015 Questionnaire and assigned it "some weight," but found that this opinion was "not entitled to greater weight[,]" reasoning as follows:

> A more detailed opinion was provided by Dr. Hankin in 2015, who cited to the claimant having moderate to marked limitation in sustaining ordinary work without supervision, traveling to unfamiliar places or using transportation, setting realistic goals and making plans independently (Exhibit 19F). Marked limitation in understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule and consistently being punctual, working in coordination with or near others without being distracted by them, completing a workday without interruptions from psychological symptoms, interacting appropriately with the public, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without distracting them, maintaining socially appropriate behavior and responding appropriately to work place changes were also noted (Id.). Finally, the claimant was to be absent more than three times a month from work (Id.). However, Dr. Hankin cited to none to a mild limitation in remembering locations and work like procedures, understanding, remembering and carrying out one to two step instructions, making simple work related decisions, asking simple questions or requesting assistance, adhering to basic standards of neatness and being aware of hazards and taking appropriate precautions (Id.). This opinion is given some weight, as the treatment notes do support symptoms related to the claimant's mental impairments. However, this opinion is not entitled to greater weight because the longitudinal evidence, including Dr. Hankins [sic] own treatment notes, do not support the marked limitations cited in this opinion, but rather record marked subjective complaints that are not consistent with objective testing that were overall normal (see Exhibit 27F).

R. 627–28.

Plaintiff challenges, *inter alia*, ALJ Cerulli's evaluation of Dr. Hankin's September 2015 Questionnaire, arguing that ALJ Cerulli did not indicate what portions of the "treatment notes" were inconsistent with this opinion and that ALJ Cerulli only generally referred to Dr. Hankin's apparent reliance on "subjective complaints" that were purportedly inconsistent with unidentified "'objective testing that were overall normal[.]'" *Plaintiff's Brief*, ECF No. 22, p. 15 (quoting R.

16

628). Plaintiff further argues that the "objective testing" to which ALJ Cerulli refers as "Exhibit 27F," R. 1067–97, is not, in fact, objective testing relating to Plaintiff's mental impairments. *Id.* at 16. Rather, Exhibit 27F contains a four-page treatment note from Dr. Hankin which is dated January 22, 2019, and which significantly post-dates the date on which Plaintiff was last insured, *i.e.*, June 30, 2015. R. 1067–70. The remainder of Exhibit 27F contains prescription records from 2016 through 2018, 1071–93, and a treatment record from 2018 for nausea and vomiting related to migraines, R. 1095–97.[4] *Plaintiff's Brief*, ECF No. 22, p. 16; *Plaintiff's Reply Brief*, ECF No. 26, pp. 5–6.

Plaintiff's arguments are well taken. Notably, as Plaintiff points out, Exhibit 27F contains no treatment notes or objective testing within the relevant period that undermine Dr. Hankin's September 2015 Questionnaire. *See* R. 1067–97. It is true that Exhibit 17F, R. 567–79 contains notes from Dr. Hankin's treatment of Plaintiff. However, to assume that the ALJ's reference to Exhibit 27F was a typographical error would be to engage in unsupported speculation, particularly since the administrative decision does not describe the evidence upon which the ALJ intended to rely. *See also Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 23, pp. 12–14 (containing no argument that ALJ Cerulli's reference to Exhibit 27F resulted from a typographical error); *cf. Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

---

[4] Exhibit 27F, p. 28, R. 1094, is blank except for a man's name at the top of the page who shares Plaintiff's same last name.

Moreover, even if the Court were to presume that ALJ Cerulli intended to rely on the treatment notes contained in Exhibit 17F, R. 567–79, it is not apparent that "objective testing" within this exhibit is inconsistent with Plaintiff's subjective complaints or with the opinions articulated in Dr. Hankin's September 2015 Questionnaire. *See generally* R. 628. Similarly, the ALJ nowhere explains why the "longitudinal evidence" regarding Plaintiff's treatment was inconsistent with this opinion. *See id.* The limited explanation provided by ALJ Cerulli therefore does not allow this Court to understand and assess the basis for the ALJ's decision to accord only some weight to Dr. Hankin's September 2015 Questionnaire. *See Jones,* 364 F.3d at 505 (stating that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *Zigarelli v. Comm'r, Soc. Sec. Admin.*, No. CV 18-12690, 2019 WL 3459080, at *4 (D.N.J. July 30, 2019) ("The ALJ, however, does not explain in what way he found the limitation to be vague, nor does he cite to specific contradictory evidence in the record. . . . [and] fails to explain how the opinion and treatment note are inconsistent with each other.[] Thus, the Court cannot determine whether the ALJ properly discounted Dr. Ranawat's opinion in this regard."); *Hines v. Colvin*, No. CV 18-13828, 2018 WL 6313499, at *4 (D.N.J. Dec. 3, 2018) ("These vague citations to the record are insufficient to 'provide a clear and satisfactory explication" of the weight given to Dr. Allegra's opinion in order to assist a reviewing court in "perform[ing] its statutory function of judicial review.'") (quoting *Cotter*, 642 F.2d at 704–05).

The Acting Commissioner does not address Plaintiff's challenges to ALJ Cerulli's inexplicable reference Exhibit 27F, but instead points to other portions of the record that she believes supports ALJ Cerulli's assessment of Dr. Hankin's September 2015 Questionnaire. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 23, pp. 12–14. The Court rejects

18

the Acting Commissioner's suggestion that other evidence in the record supports ALJ Cerulli's consideration of Dr. Hankin's opinions contained in the September 2015 Questionnaire. *Id.* The ALJ did not rely on this evidence in weighing Dr. Hankin's September 2015 Questionnaire. R. 627–28. The Commissioner's *post hoc* rationalization in this regard must therefore be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

Moreover, it is unclear to what extent this error infected ALJ Cerulli's determination of Plaintiff's RFC. R. 624–28. Thus, the Court cannot meaningfully review the ALJ's RFC finding and determine whether substantial evidence supports that finding at step four. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis.").

This Court therefore concludes that the decision of the Commissioner must once again be reversed, and the matter must once again be remanded to the Commissioner for further consideration of the opinions of the treating psychiatrist, William Hankin, M.D. Remand is appropriate, moreover, even if further examination of those opinions again persuades the Acting Commissioner that Plaintiff is not entitled to benefits; that determination is for the Acting Commissioner—not this Court—to make in the first instance. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks.").[5]

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  September 7, 2021                                        *s/Norah McCann King*
                                                                                    NORAH McCANN KING
                                                                                    UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Hankin's opinions, the Court does not consider those claims. In addition, on remand, the Court encourages the Acting Commissioner, if she again assigns only "some weight" to Dr. Hankin's opinions, to clarify those portions of the opinion that are credited and those portions that are rejected.

20